UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LAURIE WHEELER,

        Plaintiff,

v.                                                    Case No. 04-C-329

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

        Defendant.

**DECISION AND ORDER**

        This is an action for judicial review of the final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 402(e), 1381. Plaintiff Laurie Wheeler filed an application for DIB and SSI in June and July of 2000 alleging disability beginning October, 1997, due to fibromyalgia, chronic fatigue and shoulder pain. The agency denied plaintiff's application initially and upon reconsideration. Plaintiff requested a hearing which was held before Administrative Law Judge Robert Bartelt, Jr., on December 13, 2002. Plaintiff, represented by counsel, along with her husband, testified at the hearing. In a May 12, 2003 decision, the ALJ applied the agency's five-step sequential evaluation, and found that plaintiff retained the residual functional capacity ("RFC"), to perform the full range of light work. In light of this RFC and plaintiff's vocational profile, the ALJ found that the Medical-Vocational Guidelines (grid rules) directed the plaintiff was not disabled

because she retained the capacity to perform a significant number of jobs. The ALJ's decision became the final decision of the commissioner when the appeals counsel denied review.

Plaintiff argues that reversal, or at least remand, is required. She contends that the ALJ improperly weighed the opinions of her treating physician and the credibility of her subjective complaints. She also argued that the agency is bound under the principles of *res judicata* by a 1998 agency decision that plaintiff was disabled but not entitled to SSI for financial reasons. For the reasons that follow, I reject plaintiff's arguments and conclude that the commissioner's decision must be affirmed.

**STANDARD OF REVIEW**

I must uphold the ALJ's decision so long as it is supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Gudgel v. Barnhart*, 345 F3d 467, 470 (7th Cir. 2003). Substantial evidence means such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gudgel*, 345 F3d at 470 (internal quotes and citation omitted). An ALJ must articulate, at least minimally, his analysis of the evidence so that the reviewing court may follow his reasoning. *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002). This does not require, however, that there be a written evaluation of each piece of evidence. The role of the reviewing court is to give the ALJ's opinion a "commonsensical reading" as opposed to "nitpicking at it." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). No principle of administrative law or common sense requires [the reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

## ANALYSIS

Plaintiff first argues that the commissioner committed an error of law in failing to accord adequate weight to the opinion of the her treating physician, Dr. Greene. In a Fibromyalgia Residual Functional Capacity Questionnaire dated January 2, 2003, Dr. Greene, an osteopathic physician, stated that plaintiff could sit for five minutes at a time, stand for fifteen minutes at a time, and sit and stand/walk for less than two hours in an eight-hour work day. Dr. Greene opined that plaintiff needed a job that let her shift positions at will and provided unscheduled breaks every fifteen to twenty minutes at which time she would need to lie down. According to Dr. Greene, plaintiff could rarely twist, stoop or climb ladders and could occasionally crouch and climb stairs. She could never look down, could rarely turn her head left or right and could occasionally hold her head in static. She would be expected to miss work four days a month due to her impairment. In Dr. Greene's opinion, she could not work a full-time job, but would be able to work only one-to-two hours per day. (Tr. 179-81.)

Clearly, had the ALJ accepted Dr. Greene's opinion, he would have found plaintiff disabled within the meaning of the Act. The ALJ did not accept Dr. Greene's opinion, however, and plaintiff contends his rejection of her treating physician's opinion constitutes error. She contends that the ALJ erroneously played doctor, substituting his judgment for that of the medical experts. She also contends that the ALJ's determination that her testimony was less than credible is fundamentally flawed.

It is well established that "a treating physician's opinion is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). *See also* 20 C.F.R.

3

§ 404.1527(d)(2); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). However, a claimant is not entitled to disability benefits simply because her physician states she is "disabled or unable to work." As *Dixon* notes, "the claimant's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." *Dixon*, 270 F.3d at 1177. There exists also the possibility that a claimant's regular physician may not appreciate how his patient's case compares to other similar cases and how the determination of disability is made. Thus, it can occur that a consulting physician's opinion, as opposed to that of a treating physician, may have advantages of both impartiality and expertise. *Id*.

Here, the ALJ gave several reasons for discounting Dr. Greene's opinion concerning plaintiff's functional capacity. He noted that Dr. Greene's opinion that plaintiff was disabled "is not consistent with the rest of claimant's medical record." (Tr. 16.) The ALJ observed that Dr. Greene stated in her own report that "her findings were 'not fact based,' since actual functional capacity testing through physical therapy was not done." (Tr. 16, quoting Tr. 179.) Dr. Greene's own records reflected that most of plaintiff's visits "dealt with depression, not fibromyalgia." (Tr. 146.) In a Fibromyalgia Residual Functional Capacity Questionaire submitted only a month-and-a-half earlier Dr. Greene had given no opinion on the length of time plaintiff could sit, stand or walk, or how often she would need unscheduled breaks or be absent from work, noting she was unable to assess these areas as she hadn't seen her in six months. Despite her inability to assess plaintiff's function in these areas, however, Dr. Greene nevertheless opined that plaintiff could not lift or carry even objects weighing less than ten pounds. (Tr. 148-51.) The rest of Dr. Greene's records show approximately eight visits with the first on August 2, 2000. On several visits, there is no mention

4

of fibromyalgia as an active problem, and when it does appear in the records her condition is marked "stable." (Tr. 161, 163, 165, 167, 169,171, 173.)

By her own admission, Dr. Greene's opinions concerning plaintiff's condition were based on plaintiff's subjective complaints. It therefore follows that the reliability of Dr. Greene's opinion rested on the credibility of plaintiff's subjective complaints. Here, too, the ALJ made clear and specific findings as to why he did not find plaintiff's complaints of severe and debilitating pain credible. He noted that the objective medical evidence did not support her claim and observed that "there were few if any signs or findings that are of any significant importance in making a diagnosis of fibromyalgia." (Tr. 18.) Noting that a characteristic finding in cases of fibromyalgia is the presence of "discrete, identifiable tender or trigger points," the ALJ found it significant that when she was examined by Dr. Johnson at the request of the Administration, "she was tender to <u>all</u> areas of palpation, not simply in the specific, discrete trigger points ...." (Tr. 18.) He also found that her claims of sleep disorder and phlebitis were not well documented, and did not result in limitations. He found her testimony that she could only walk a couple of blocks inconsistent with her report to Dr. Johnson that she could walk for one to two miles. (Tr. 18.) Finally, the ALJ found plaintiff's testimony that she was unable to sit for more than a minimal amount of time were belied by her own conduct at the hearing. He noted that she sat for well in excess of five minutes during the hearing without any sign of discomfort. "The only time she got out of her chair during the entire hearing, lasting over 50 minutes, was when she switched places with her husband so he could testify." (Tr. at 18).

Plaintiff contends that by questioning her diagnosis of fibromyalgia, the ALJ succumbed to the temptation to "play doctor," an error the Seventh Circuit has consistently cautioned ALJs to

5

avoid. See *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996), and cases cited therein. But an ALJ does not play doctor when he credits medical evidence that calls into question a claimant's allegedly disabling condition. Here, the report of Dr. Johnson's physical examination of plaintiff did just that. Because he could find no specific trigger points in the course of his examination, Dr. Johnson concluded in his report that it was only possible plaintiff had fibromyalgia, notwithstanding her claims that she had been previously diagnosed with this condition. (Tr. 107.) This was not unreasonable in light of the absence of evidence as to how and when the diagnosis was made. As the Commissioner points out, although Dr. Greene reported that plaintiff met the American College of Rhematology (ACR) criteria for fibromyalgia, her treatment notes reveal that she did not perform any formal clinical testing or a thorough physical examination. In fact, there are no treatment notes of any of plaintiff's physicians that show how this diagnosis was arrived at. It appears that Dr. Greene simply accepted plaintiff's statement that she had been diagnosed with this condition.

Moreover, the rule against ALJ's adopting the role of physician does not mean they are not free to assess the subjective complaints of a claimant in light of the characteristics of the condition that has been diagnosed. The information plaintiff herself submitted in the Appendix to her brief supports the ALJ's statement that fibromyalgia is characterized by multiple, discrete tender points. (App. at 27.) Even assuming the diagnosis was proper, the fact that plaintiff complained of tenderness everywhere in the course of Dr. Johnson's examination, whereas fribromyalgia is characterized by discrete trigger points ,was what the ALJ found significant. It was part of his reason for doubting her credibility.

Plaintiff also challenges the ALJ's finding that her conduct at the hearing was inconsistent with her claim that she could not sit for more than five minutes. (Tr. 179.) She notes that the "sit

6

and squirm" test, as it has been described, has been rejected by the Seventh Circuit and most courts as a measure for a claimant's credibility. But while the court has expressed discomfort with what has been referred to as the "sit and squirm" test, it has not shied away from the role of observation in credibility determinations. *See Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000). By considering plaintiff's appearance over the course of the hearing as one factor among others in the credibility of her claims, I cannot say that the ALJ committed reversible error.

Plaintiff criticizes the ALJ for failing to consider her use of medications and daily activities. She testified that she was taking Ultram for pain and muscle spasms, Lodine for muscle cramps, and Prilosec and Davocet for extra help with pain. She also testified, and her husband confirmed, that she was able to do little around the house. Proper consideration of this evidence, she contends, supports her claim that she is disabled. But having found that she was not credible concerning her alleged impairments, it would make little sense for the ALJ to accept her testimony as to the limitations they imposed or the frequency with which she required medication.

Based on his assessment of plaintiff's testimony and the medical evidence, which included not only the report of Dr. Johnson, but also the determinations of two non-examining State Agency physicians that plaintiff could perform the full range of light work with a limited ability to reach overhead with her right arm (Tr. 111-18), the ALJ concluded that plaintiff retained "the residual functional capacity to do a full range of light work or work that involved lifting and/or carrying up to twenty pounds occasionally and up to ten pounds frequently." (Tr. 20.) Given plaintiff's vocational profile, the Medical-Vocational Guidelines compelled a finding that plaintiff was not disabled. I conclude that ALJ has sufficiently articulated his analysis of the evidence to allow a

7

reviewing court to follow his reasoning and, further, that his decision is supported by substantial evidence.

Lastly, plaintiff argues that the ALJ was bound by principles of *res judicata* because she was previously found to be disabled and awarded SSI benefits. Her benefits were later terminated due to her husband's income, but there is no evidence of any improvement in her medical condition. Thus, plaintiff argues, the Agency is collaterally estopped from claiming she is no longer disabled.

It is true that under some circumstances, the doctrine of *res judicata*, or collateral estoppel, can bar re-litigation of an issue already addressed in a previous binding decision. *See Rucker v. Chater*, 92 F.3d 492, 495 (7th Cir. 1996). However, *Rucker* held that when the claimant's applications are separated in time, such that a different conclusion as to the claimant's condition could plausibly be reached, *res judicata* does not apply. *Id.* at 495. *See also Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998) (" [A] claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994."). In this case, plaintiff's application for DIB was filed in June of 2000, and almost all the evidence considered by the ALJ post-dated the earlier finding of disability. Because a claimant cannot receive DIB for a period more than a year before the date of application, the instant application raised the issue of whether she was disabled as of July 1999. The fact that plaintiff was disabled in January of 1998, does not require a finding that she was disabled in June of 1999. Accordingly, collateral estoppel does not apply. The hearing before the second ALJ, therefore, was not a "re-evaluation" of the evidence, but rather an independent consideration of her eligibility at the time of her second application. The time period was different, and a different outcome is not necessarily inconsistent. *See Reynolds v. Bowen*, 844 F.2d 451, 454 (7th Cir.1988). I conclude that *res judicata* does not apply.

8

One final matter deserves comment. The Commissioner contends that plaintiff's counsel failed to comply with the court's July 9, 2004 order requiring that he either register for electronic case filing or file a motion to be excused from the requirements of electronic filing within ten days. Failure to comply, the court cautioned, could result in dismissal pursuant to Rule 41(b), Fed. R. Civ. P. The Commissioner argues that for this reason alone dismissal is appropriate. The record reflects, however, that although counsel failed to register within ten days of the order, he did register shortly thereafter and is now in compliance. I therefore conclude that no further action need be taken in that regard.

In sum, and for the reasons set forth above, I conclude that the Commissioner's decision did not result from legal error and is supported by substantial evidence. The decision denying plaintiff's application for benefits is therefore affirmed and the action is dismissed.

**SO ORDERED.**

Dated this 8th day of June, 2005.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

9